*681 OPINION OF THE COURT
David B. Saxe, J.
Exactly what rights are conveyed when the air rights over a building are transferred to an adjacent parcel of land so that the height of a building constructed on the neighboring property exceeds the limitations set by applicable zoning law height restrictions?
This motion concerns a dispute over the scope of rights granted by a conveyance of air rights. The air space at issue is located over property at 5 Chatham Square, now occupied by the Bank of Central Asia (BCA) and adjacent to property leased by Citibank.
The plaintiff, Wing Ming Properties (U.S.A.) Ltd. (Wing Ming), is the owner of a plot of land in Chinatown on Chat-ham Square and Mott Street, contiguous to 5 Chatham Square; it is currently leased to Citibank. Each of the defendants has had some possessory interest during the past in 5 Chatham Square, the plot of land over which the air space is situated. Defendant Mott Operating Corp. (Mott) is the owner of 5 Chatham Square, and defendant Leah Kaplan (Kaplan) is its lessee. Defendants Chu and Tam were sublessees of the premises in 1973 and signatories to a 1973 document transferring air rights from Kaplan and Mott to Hon Yip, Wing Ming’s predecessor in interest. Defendant Bank of Central Asia is the current sublessee of 5 Chatham Square and the entity primarily responsible for the alleged infringement upon Wing Ming’s claimed right to exclusive control and physical occupation of the air space above the building.
Plaintiff requests a declaration that its air space has been vertically invaded by air-conditioning units and parapets constructed by the Bank of Central Asia upon the roof of 5 Chatham Square. It alleges that the construction constitutes a continuing trespass upon the air space above the building and accordingly seeks a permanent injunction abating the trespass together with compensatory and exemplary damages to be determined at an inquest. Defendants Mott, Kaplan, Chu and Tam were made parties to this action on account of their failure, despite alleged notice, to prevent and restrain the Bank of Central Asia from committing the purported trespass.
The present motions consist of an application by defendants Mott, Kaplan, Chu and Tam for summary judgment, pursuant to CPLR 3212, dismissing the complaint for failure to state a cause of action as to them, a separate application by defen *682 dant Bank of Central Asia for similar summary judgment relief, and a cross motion by the plaintiff for summary judgment granting the relief specified in its complaint.
The events leading to the current dispute began in the early 1970’s. Plaintiff’s predecessor in interest, Hon Yip, planned to construct a building upon the land he owned adjacent to 5 Chatham Square. He envisioned a structure which would exceed the maximum height permitted under the city zoning regulations (NY City Zoning Resolution § 12-10). The Zoning Resolution imposes height restrictions based upon a ratio calculated by dividing the total floor area on a lot ("the sum of the gross areas of the several floors of a building”) by the area of the lot upon which a building is to be constructed; the builder is limited to a specified floor area ratio (F.A.R.). Recognizing the hardship imposed upon city builders who have access to finite amounts of landspace but must accommodate large numbers of people in proportion, the Resolution provides a loophole. If two adjacent lots are under "single ownership”, the unused floor area ratio may be transferred from one lot to another. Thus, if one lot has a two-story building, but based upon the area of the lot upon which it rests maximum height allocable to it would be 10 stories, it may transfer the right to build another 8 stories to a contiguous lot under the same ownership. The transaction technically involves the conveyance of air space from one plot to the next and the rights in the air space exchanged are probably best viewed as "air development rights” (see, Pedowitz, New York City Zoning Resolution 12-10: A Third Phase in the Revolution of Airspace Law, 11 Fordham Urban LJ 1039, 1048; 1 Warren’s Weed, New York Real Property, Airspace Rights, §§ 1-4.06 [4th ed]).
A two-story theatre, owned by Mott, leased by Kaplan, and subleased at the time by Chu and Tam, was situated upon the lot contiguous to Hon Yip’s property. The height of this building was substantially lower than the F.A.R. allocable to it under the Zoning Resolution. Since the acquisition of a sufficient ownership interest in the adjacent plot of land at 5 Chatham Square could facilitate a transfer of air development rights and enable him to construct the "oversized” building on his Mott Street property, Hon Yip arranged to acquire the status of "single ownership” mandated by the Zoning Resolution.
Hon Yip’s initial attempt at establishing ownership in 5 Chatham Square was the execution of the document entitled *683 "1973 Conveyance of Air Rights” (Conveyance) to which Mott, Kaplan, Chu and Tam were parties. The agreement leased to Hon Yip the undeveloped volume of air space over 5 Chatham Square for a period of 78 years for the sum of $10,000. Following the conveyance, Hon Yip applied to the New York City Building Department for approval of a construction on Mott Street using the air development rights transferred from Chatham Square. He submitted the conveyance as proof of his "single ownership” in compliance with the Resolution. The Building Department rejected his proposal, with the explanation that a single zoning lot could not be created merely by the acquisition of air space; ownership in the land surface beneath it was required as well. Immediately thereafter, Hon Yip obtained an assignment of Kaplan’s lease which included rights in both the land and air found at Chatham Square. Hon Yip then reapplied to the Building Department and received approval for his project, based upon his compliance with the New York City Zoning Resolution. Hon Yip proceeded to construct a 12-story building utilizing the unused air development rights of the adjacent property. Upon completion of the construction of the building in 1978, Hon Yip reassigned to Kaplan her lease, with the exception of a leasehold interest in the air rights over her property. In 1978, Wing Ming acquired Hon Yip’s interest in the property on Mott Street and the rights to the air space above 5 Chatham Square.
In 1985, defendant Kaplan subleased her retained interest in 5 Chatham Square to defendant Bank of Central Asia. The agreement between Kaplan and the Bank of Central Asia permitted the installation of new air-conditioning units on BCA’s roof and construction of a parapet to conceal these units from view. Both additions were allegedly completed by 1986.
This action in trespass was brought by plaintiff because of its concern that the newly installed air-conditioning units and parapets have increased the utilized floor area space on 5 Chatham Square. If this is so, it fears that the air development rights transferred to Wing Ming’s property would be deemed illegal since the rights contained in the air space are being simultaneously used by both properties. Wing Ming fears that the Building Department will be alerted to the contemporaneous use of air development rights, will confiscate the excess floor area space of the Citibank building, and force it to reduce its multistory office building to legal size.
Wing Ming asserts that even if as a matter of law the floor *684 area space at 5 Chatham Square has not been increased, the construction of air-conditioning units and parapets on the roof still constitutes a trespass by BCA. He claims that a conveyance of air rights encompasses a transfer of both development rights encapsulated in the exchanged volume of air space and the right to its exclusive physical occupation and control. Defendant BCA contends that these rights are separate and distinct and that the sole right acquired by Wing Ming was the regulatory development right allowed under the Zoning Resolution. BCA further defends itself against Wing Ming’s allegations by asserting as a matter of law that no trespass to plaintiffs development rights exists.
At issue is the scope of the rights encompassed in the term "air rights” used in the 1973 Conveyance of Air Rights. Interpretation of contracts is generally considered a matter of law to be determined by the court provided that the document is clear and explicit in its terms and can be construed through an analysis of the four corners of the document (4 Williston, Contracts § 601 [3d ed]; 22 NY Jur 2d, Contracts, § 189 [1982]). If ambiguities exist in either the language employed or the intent and circumstances surrounding its execution, extrinsic evidence may be offered by the contracting parties and the resolution of the dispute becomes a question of fact to be determined by a jury. Evidence may be considered concerning the actions of the parties which reflect their understanding of the agreement, as well as concerning the prevalent custom and usage of an industry as incorporated in the choice of certain terms within the document, in order to ascertain the intent of the parties at the time of the contract’s execution (see generally, 22 NY Jur 2d, Contracts, §§ 187-209). Although consideration of extrinsic evidence generally involves fact-finding, under certain circumstances the court may grant summary judgment in an action concerning construction of a contract, based upon an analysis of the disputed document and extrinsic evidence offered. This is the case when the court is convinced that the interpretation offered by the moving party is the only one which can fairly and reasonably be attributed to the document (Musman v Modern Deb, 56 AD2d 752 [1st Dept 1977]; Matter of Cromwell Towers Redevelopment Co. v City of Yonkers, 41 NY2d 1 [1976]).
Defendants offer sufficient evidence of the history surrounding both the execution and performance of the provisions contained within the 1973 Conveyance of Air Rights to convince this court that summary judgment is warranted as to *685 interpretation of the term "air rights” as contained in the agreement. Hon Yip’s actions prior and subsequent to the execution of the agreement, and the prevalent custom and usage of the term "air rights” clearly manifest the acquisition of air development rights, and not rights to exclusively occupy and control the physical air space over 5 Chatham Square.
A primary factor to be considered in any attempt to interpret a contract is the purpose of the parties in making the contract (Matter of Cromwell Towers Redevelopment Co. v City of Yonkers, supra, at 6). Hon Yip’s actions substantiate the fact that he entered into the series of agreements with the defendants for the sole purpose of acquiring the development rights unused by the occupiers of 5 Chatham Square. Hon Yip knew that New York City zoning laws prohibited the building of a 12-story building on his property. He therefore sought to legally "borrow” the unused air development rights of the two-story building situated on the property adjacent to his own. Immediately prior to the drafting in of the 1973 Conveyance of Air Rights, the seminal case of Newport Assocs. v Solow (30 NY2d 263 [1972], cert denied 410 US 931 [1973]) was decided, which recognized that ownership of air space is a valuable property interest. In Newport, the defendant was in possession of a parcel of property and the building upon it pursuant to a 21-year lease with options to renew totalling 99 years. He was also the owner in fee of two parcels of land contiguous to the leased property upon which he desired to build a 45-story building. The projected height of the proposed office building exceeded the F.A.R. allowed under New York City Zoning Resolution § 12-10. The defendant requested permission from the New York City Building Department to borrow the surplus development rights from his leased property and incorporate them into the building to be constructed on his fee property, so as to allow for a greater maximum floor space. Plaintiff, the owner of the leased property, contested the Building Department’s approval of defendants’ plan claiming that possession of a leasehold interest in his property did not authorize defendant to utilize the unused air space. The Court of Appeals held, that absent an explicit contractual provision to the contrary, a leasehold interest such as the defendant held was sufficient to constitute ownership for the purposes of complying with Zoning Resolution § 12-10.
The terms of the 1973 Conveyance of Air Rights reflect Hon Yip’s interpretation of the Newport case (supra). He concluded that a 78-year leasehold interest in air space together with his *686 ownership in fee of the adjacent property, would be sufficient to comply with the "single ownership” requirement of the Zoning Resolution and the recent precedent. Then, when the Building Department rejected Hon Yip’s application, requiring not only a possessory interest in air space, but in the land surface beneath it, Hon Yip took immediate measures and succeeded in curing the defects in the previous conveyance. He retained the assignment of the whole of Kaplan’s property for the minimal period of time necessary to enable him to legally integrate the undeveloped F.A.R. space of the property into his own multistory development. After reassigning Kaplan’s lease, he maintained a leasehold interest in the volume of air space solely to deter others from using the development rights contained within it. All of this supports the conclusion that only development rights were conveyed.
Wing Ming’s contention that a possessory interest in air development rights automatically entitles one to the right of physical occupation of the air space within which the development rights are encapsulated, is, moreover, contrary to the dictates of custom and usage. Provided that custom and usage of a term within an industry is lawful and reasonable, it is presumed to be incorporated into a contract (see generally, 22 NY Jur 2d, Contracts, §§ 204-209). Within the construction industry, a known distinction exists between a possessory interest in air development rights and the right to physically occupy a volume of air space. Physical occupation of air space requires the acquisition of a means of access or support from the surface land to facilitate development. Therefore, some interest in the land directly under the "air” to be developed must be retained by the builder (see generally, 1 Warren’s Weed, New York Real Property, Airspace Rights, §§ 1-4.06 [4th ed]). No such support or access was acquired by Hon Yip or Wing Ming, although an easement in the surface land could have been retained along with the air space received from Kaplan.
It is consequently established by an analysis of the intent of the parties to the conveyance and by custom and usage that the only fair and reasonable interpretation of the term "air rights” used in the 1973 Conveyance of Air Rights is as synonymous exclusively with F.A.R. air space development rights. BCA’s rooftop installations could have potentially constituted a trespass only if it had been proven that that construction actually increased the floor area of its building encroaching on the development rights obtained by Wing *687 Ming. The language of Zoning Resolution § 12-10 as applied to the present facts, however, clearly indicates the absence of a trespass. Floor area is defined by the Zoning Resolution as: "The sum of the gross areas of the several floors of a building * * * measured from the exterior faces of exterior walls or from the center lines of walls separating two buildings.” Specifically excluded from this definition of floor area is "floor space used for mechanical, equipment and open terraces provided no more than 50% of it is enclosed by a parapet not higher than three feet eight inches.” The new air-conditioning equipment falls under the statutory exception of "mechanical equipment” placed in "open [roof] space”. The parapets are similarly excepted since they are less than 3 feet 8 inches high. BCA’s construction technically did not increase the floor area space of its building. Therefore, as a matter of law, there has been no trespass on the air development rights acquired by plaintiff to build the 12-story structure presently housing a Citibank facility.
In determining a motion for summary judgment, the court’s function is limited to the ascertainment of the existence of any issues of material facts in the proofs laid bare by affidavit based on personal knowledge and documentary evidence, rather than conclusory or speculative statements (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065 [1979]). In opposing such a motion, a party is required to assemble and lay bare proofs that its claims are real and capable of being established at trial (Indig v Finkelstein, 23 NY2d 728 [1968]).
Defendant Bank of Central Asia has provided sufficient proof establishing that the rights conveyed to the plaintiff were air development rights and that as a matter of law no trespass on these rights exists. Plaintiff fails to offer sufficient evidentiary proof to the contrary. Consequently, no triable issue of fact exists.
Accordingly, the motions by defendants Mott, Kaplan, Chu, Tam and Bank of Central Asia for summary judgment are granted and plaintiff’s cross motion for summary judgment and declaratory and injunctive relief is denied.