OPINION OF THE COURT
Diana A. Johnson, S.
Upon the foregoing papers, respondent JPMorgan Chase bank moves for an order pursuant to CPLR 3211 (a) (1) and (7) dismissing this turnover proceeding as against it. In the alternative Chase moves to dismiss or stay the proceeding to permit arbitration of the claims asserted against it.
Petitioner Dolores McCullough commenced the underlying turnover proceeding citing LaVerne Cave, Alvin Eugene Leonard and JPMorgan Chase. The petition seeks (1) a decree directing Alvin Eugene Leonard to turn over the $470,000 he converted from the estate of Gertrude Ray from the date of the conversion along with legal fees paid to him of $39,739.54, plus statutory interest; and (2) a decree directing JPMorgan Chase to turn over the $470,000 plus statutory interest from the date of the conversion.
Petitioner’s claim against Chase is premised on three causes of action: its payment on checks some 17 months after expiration of the preliminary letters; its alleged failure to use ordinary care and acceptable banking practices in not sending copies of the banking statements to the home or office of Dolores McCullough and LaVerne Cave; and its alleged failure to make even a cursory comparison of the signature on the checks with that of LaVerne Cave on file at Chase.
The underlying facts are as follows. On October 29, 2004, petitioner Dolores McCullough and LaVerne M. Cave, Esq.[1] were appointed preliminary coexecutors of the estate of Gertrude Ray. The coexecutors retained Alvin Eugene Leonard, Esq. as counsel. The coexecutors marshaled the assets of the estate depositing approximately $702,000 into an account at Chase opened on November 10, 2004. The preliminary letters testamentary expired on April 29, 2005 and were not renewed until February 19, 2008. Between November 9, 2006 and March 27, 2007, Mr. Leonard drew 17 checks on the account totaling $470,000. The checks were made payable to him as attorney. He *287 signed them using the name of LaVerne Cave, and deposited them in his attorney-at-law checking account. These withdrawals were made without the knowledge or approval of LaVerne Cave or Dolores McCullough. On or about May 16, 2007, demand was made upon Mr. Leonard for return of the converted funds, and on or about May 22, 2007, a complaint was filed with the Departmental Disciplinary Committee of the Appellate Division, First Department.[2] Petitioner does not allege when notice was given to Chase concerning the forged checks.
In support of its motion Chase submits the affidavit of Charles J. Buckheit, a vice-president at Chase, dated May 21, 2008. Mr. Buckheit is in charge of the daily operation of Chase’s Statement Services Department responsible for insuring that statements are processed in an accurate and timely manner. He relates that the statements were mailed by the end of each month to the address specified when the account was opened. There is no record of anyone ever complaining of nonreceipt of any statement or of any statement being returned to Chase due to nondelivery. He points out that true and accurate copies of the monthly statements for the account for the period November 10, 2004 through May 12, 2008 are attached as exhibit B to the motion.
Chase also submits two affidavits from Juliette N. Tran, a sales manager at Chase. In her affidavit dated May 20, 2008, she indicates that the opening documents (exhibit E) are true and accurate copies of the documents maintained by Chase for the account. She relates that on November 10, 2004, petitioner McCullough and LaVerne Cave opened the account. A business signature card, business account application and an authorization form were completed and signed by them. The opening documents directed that statements be mailed to 299 Broadway, New York, New York. In the opening documents they acknowledged receiving the terms and conditions for the account. In her reply affidavit dated July 2, 2008, she identifies and provides a true and accurate copy of the terms and conditions that were in effect when the account was opened.
Finally, Chase submits the affidavit of Jacobson Bathelmy, an assistant vice-president at Chase, dated May 21, 2008. He *288 indicates that on November 10, 2004, the coexecutors and their attorney appeared before him and opened the account. The opening documents were completed using the information and documents provided by the coexecutors. The documents were given by him to the coexecutors for review and signature. He provided the coexecutors with the account’s terms and conditions which they acknowledged receipt of when they signed the opening documents. He indicates that the opening documents for the account annexed to the motion are true and accurate copies of the documents he received and prepared in connection with the opening of the account.
The affidavits of Buckheit, Tran and Bathelmy collectively constitute evidence in admissible form by individuals with personal knowledge (see Zuckerman v City of New York, 49 NY2d 557 [1980]).
In her affidavit in opposition to the motion, petitioner McCullough alleges that the seminal issue before the court is not the forgery, but the willful disregard of the limiting order on the preliminary letters’ validity to six months. In addition petitioner avers that neither she nor anyone else received or was shown a copy of the terms and conditions for the account. She further states that neither she nor her cofiduciary were given the signature cards or opening documents to read, but were merely told to sign them.
Uniform Commercial Code § 4-401 (1) imposes strict liability on banks for items paid which were not properly payable, such as forged checks (Woods v MONY Legacy Life Ins. Co., 84 NY2d 280 [1994]). However UCC 4-406 (4) bars a suit to recover amounts paid on a forged instrument where the customer fails to give notice of the forgery within one year of the time the account statement was made available (Vantrel Enters. v Citibank, 272 AD2d 609 [2d Dept 2000]). Statements are considered “made available” to the customer for purposes of the UCC where a customer requests that the bank mail statements to him/her or another person, and the bank complies (Robinson Motor Xpress, Inc. v HSBC Bank, USA, 37 AD3d 117, 119 [2d Dept 2006]).
Petitioner does not dispute that the address, 299 Broadway, New York, New York, Mr. Leonard’s business address, was the address that she and Mrs. Cave provided in the opening documents for the mailing of statements, or that Mr. Leonard was designated as the contact person on the account. In section 9 of the authorization form, McCullough and Cave acknowledged *289 that they “understood that credit account agreements, hilling statements and other notices will only be sent to the business mailing address indicated on this application” (compare Robinson Motor Xpress, Inc., supra, and Matin v Chase Manhattan Bank, 10 AD3d 447, 448 [2d Dept 2004] [statements mailed to an address other than which the customer had designated were not considered “made available” under the UCC]).
As the statements herein were mailed to the address designated by petitioner and her then coexecutor, which they acknowledged would be the only address the statements would be sent to, there is no basis for the claim that Chase should have sent copies of its banking statements to Dolores McCullough and LaVerne Cave at their home or office.
The one-year time period in UCC 4-406 (4) may be shortened pursuant to the terms and conditions of the bank account. In this proceeding the terms and conditions for the account when opened required notification of any errors, discrepancies or irregularities within 60 days of the mailing or transmission of the monthly statement (see exhibit A to Chase’s reply affirmation, terms and conditions ¶ 19).[3] This served to abbreviate the statutory one-year condition precedent to actions against Chase to 60 days based on negligence in detecting a customer’s forged signature (see Gluck v JPMorgan Chase Bank, 12 AD3d 305 [1st Dept 2004]; Josephs v Bank of N.Y., 302 AD2d 318 [1st Dept 2003]; see also Catalano v Marine Midland Bank, 303 AD2d 617 [2d Dept 2003] [right to bring action waived by failing to notify bank as required by deposit account agreement within 14 days after statements itemizing these transactions made available]).
Petitioner claims, however, that neither she nor anyone else received a copy of the terms and conditions of the account when it was opened. However, in the documents she signed, she acknowledges receiving a copy of the pertinent rules and regulations, and that she would be bound by the terms and conditions thereof. The signature card (exhibit E) signed by petitioner reads:
“The Depositor certifies that it has reviewed the information contained in this Signature Card and the Business Account Application and finds it accurate on this date. The Depositor has received and agrees *290 to the Terms and Conditions for Business Accounts and the Business Card Agreement currently in effect and as may be amended for the type of account and services it has selected.”
As such, petitioner may not now claim she did not receive a copy of the terms and conditions for this account, or that she was unaware of their content (Dietrich v Chemical Bank, 115 Misc 2d 713 [Sup Ct, NY County 1981], affd 92 AD2d 786 [1st Dept 1983]).
Notwithstanding petitioner’s allegation that neither she nor her coñduciary were given the opportunity to read the opening documents, but were “just told to sign them,”[4] she is bound by them nonetheless (see DeAngelis v Korea First Bank, N.Y. Agency, 270 AD2d 450 [2d Dept 2000] [bank customer bound despite allegations that he failed to read the entire document he signed and was unaware of all its provisions]).
Chase argues that its first notice of petitioner’s claim occurred when it was served with the February 19, 2008 citation in this proceeding, a fact petitioner does not dispute. The last of the forged checks is dated March 27, 2007. This check would have appeared in the statement mailed out at the end of April 2007. As notice to Chase was more than 60 days after the statement containing the last forged item was made available, the bringing of any action on any of the forged checks is time-barred.
Petitioner’s remaining causes of action that Chase failed to make even a cursory comparison of the signature on the checks with LaVerne Cave’s signature or that payments were made on checks 17 months after the letters expired do not change this result.
The claim of paying on expired letters merely establishes that the withdrawals were unauthorized. This would be the case even had LaVerne Cave signed the checks herself. The case cited by petitioner, Grace v Corn Exch. Bank Trust Co. (287 NY 94 [1941]), rests on facts not present herein. In that case the court stated it must be constantly borne in mind that a bank is under no duty to protect an estate from possible embezzlement by a fiduciary, and that in order to establish liability on the bank it must be proven that it gave the wrongdoer such assistance as would make it a participant in the wrong. Mere proof that the bank failed in using care is insufficient; it must know *291 ingly assist the fiduciary in committing the wrong. Under the facts of this case the most that can be said is that the bank failed in using care in paying checks dated subsequent to the expiration of the letters.
Similarly, the claim that Chase failed to make even a cursory comparison of the signature on the checks with LaVerne Cave’s signature rests upon the theory that Chase failed to exercise care in permitting the unauthorized withdrawals.
Claims sounding in a bank’s failure to exercise ordinary care under reasonable commercial standards, however, only pertain to items paid by a bank which the customer notified the bank of, prior to the absolute time limit provided in UCC 4-406 (4) or such lesser time as was contractually provided for in the terms and conditions governing the account (see Garage Mgt. Corp. v Chase Manhattan Bank, 22 AD3d 432 [1st Dept 2005]; UCC 4-406, Comments, reprinted in McKinney’s Cons Laws of NY, Book 62x/2, at 567-568 [2001 ed]). For these items, the exception of UCC 4-406 (3) to the customer preclusion rule of UCC 4-406 (2) would apply, provided the customer establishes the lack of ordinary care on the part of the bank in paying the items. The law is clear, however, that if a customer does not discover a forged signature and give notice to the bank within the time limit of UCC 4-406 (4) or such lesser time contractually provided for, then without regard to the care or lack of care of either the bank or the customer, the customer is precluded from asserting any claims against the bank based on the forged signature (Matin v Chase Manhattan Bank, supra). Such preclusion constitutes a complete defense to the action, even with respect to common-law causes of action for negligence and breach of warranty (see New Gold Equities Corp. v Chemical Bank, 251 AD2d 91 [1st Dept 1998]).
Accordingly, based on the findings herein, as it is undisputed that Chase did not have notice of the forgeries until the commencement of this proceeding, the court grants the motion to dismiss this turnover proceeding as against Chase based on the documentary evidence presented along with the affidavits in support thereof, that any cause of action is now time-barred.
Having dismissed the causes of action asserted by petitioner against Chase, the court need not, and makes no findings regarding that portion of Chase’s motion seeking the alternative relief of arbitration of the claims.

. LaVerne Cave is no longer the preliminary coexecutor, and has neither appeared nor submitted an affirmation in this proceeding.

. Mr. Leonard has since submitted his resignation as an attorney effective July 31, 2007, which was accepted by the Appellate Division, First Department, in an order dated October 2007. The order provided that Mr. Leonard make restitution to the estate of Gertrude Ray in the amount of $470,000. To date Mr. Leonard has not done so.

. The September 2006 amendment to the terms and conditions of the account shortened the time to 30 days to report unauthorized items or errors.

. The court finds it difficult to believe that LaVerne Cave, who is an attorney, would simply sign documents without reading them because she was told to do so.