Douglas **LAMM, Plaintiff,**

v.

**STATE STREET BANK & TRUST COMPANY, Defendant.**

Case No. 12–CV–80317.

United States District Court, S.D. Florida.

Aug. 21, 2012.

Curtis David Carlson, Carlson & Lewittes PA, Miami, FL, for Plaintiff.

Andrea Robinson, Christopher Zimmerman, Eric Wolkoff, Miranda Hooker, Boston, MA, Patrick Glenn Dempsey, Stanley Howard Wakshlag, Kenny Nachwalter, P.A., Miami, FL, for Defendant.

### ORDER GRANTING MOTION TO DISMISS COMPLAINT

KENNETH L. RYSKAMP, District Judge.

**THIS CAUSE** comes before the Court on defendant State Street Bank & Trust Company's motion to dismiss complaint [DE 9] filed on May 14, 2012. Plaintiff Douglas Lamm filed a response in opposition [DE 24] on June 18, 2012. Defendant filed a reply [DE 27] on June 29, 2012. This matter is ripe for adjudication.

### I. Background[1]

In 2001, Plaintiff hired James Tagliaferri and his investment firm Taurus Advisory Group, LLC ("TAG") as his investment advisers.[2] Plaintiff entrusted a significant portion of his assets to TAG, authorizing TAG to exercise discretion in the purchase, sale, exchange, and disposition of stocks, bonds, and other securities on his behalf. In accordance with the SEC Rules and Regulations which prohibit investment advisers from having direct custody of client funds and securities, Plaintiff established two custody accounts for the holding and disposition of This assets.[3] The first account is governed by a custody account agreement entered into by Plaintiff and Chase Manhattan Bank on January 30, 2001 (the "Chase Agreement"). The second account is an Investment Retirement Account (IRA) and is governed by a separate custody agreement entered into by Plaintiff and Investors Bank & Trust Company on December 6, 2002 (the "IRA Agreement").[4] In 2007, State Street Bank & Trust Company ("State Street") took over both custody accounts and assumed the obligations of the custody agreements.

From November 2007 to November 2009, TAG, without Plaintiff's consent, engaged in a series of transactions whereby Plaintiff's conservative investments were replaced with purported securities of micro-cap companies and personal loans to friends of Tagliaferri. Upon TAG's instructions, State Street disbursed funds from Plaintiff's accounts in order to effectuate these transactions. In return, State Street received and accepted promissory notes signed by TAG, some of which were made payable to "Hunter & Co.," a company with the same address as TAG. Each of these transactions was reported to Plaintiff in the monthly account statements prepared by State Street pursuant to its obligations under the custody agreements.

On April 28, 2011, State Street sent Plaintiff a letter stating the following:

1. The facts are taken from Plaintiff's complaint [DE 1].

2. TAG was later reorganized as TAG Virgin Islands Inc. and registered as an investment adviser with the Securities and Exchange Commission (SEC).

3. Under 17 C.F.R. § 275.206(4)–2, part of the Investment Adviser's Act of 1940, 15 U.S.C. § 80b–1 *et seq.*, registered investment advisers are prohibited from having custody of client funds or securities unless they are kept in a separate client account or are maintained by a "qualified custodian."

4. Plaintiff has submitted copies of the two custody agreements as exhibits to his complaint [DE 1–3]. As such, the Court is authorized to consider these documents on motion to dismiss. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC,* 600 F.3d 1334, 1337 (11th Cir.2010).

Beginning with your account statement for September of 2010, we have been including a notice each month highlighting that illiquid, thinly traded and/or private placement securities listed in your account were past due or otherwise past their stated date of maturity and/or that the valuations reported for such assets were provided by your investment manager, TAG Virgin Islands, Inc. (TAG). Despite our repeated attempts to obtain updated valuations or confirmation that we should continue to use the previously reported valuations, we have not received valuation instructions from TAG for these assets since November 30, 2010 and, in the case of warrants valued by TAG, since July 30, 2010.

As a result of our inability to obtain current valuations from TAG, we will no longer assign a value to the above referenced assets commencing with your April 2010[sic] account statement. The account statement will indicate a value of zero with respect to these assets. Please note that the valuation of these assets as zero in your statement does not represent an assessment by us of the fair value of these assets but rather serves only to reflect the fact that TAG has not supplied us with current valuations. As previously indicated, we do not provide independent valuations for illiquid, thinly traded and/or private placement securities. We will be including an insert with your account statement describing the above valuation practice in relation to the relevant assets in your account.

The promissory notes deposited by TAG into Plaintiff's accounts were ultimately discovered to be fraudulent, and Plaintiff had "invested" over $1 million in worthless securities and mortgages. Plaintiff now seeks to recover his damages from State Street. According to Plaintiff, State Street "allowed TAG to defraud Plaintiff" by turning a "blind eye" to TAG's activities and accepting notes which were "obviously fraudulent on their face." Plaintiff's seven-count complaint contains claims for breach of express contract, breach of implied contract, breach of fiduciary duty, negligence, gross negligence, aiding and abetting breach of fiduciary duty, and aiding and abetting fraud. Each count contains allegations that State Street breached its duties by (a) accepting the fraudulent promissory notes; (b) failing to notify Plaintiff that certain purported promissory notes were signed by TAG rather than the purported obligor; (c) failing to notify Plaintiff that certain purported promissory notes were executed in favor of Hunter & Co. rather than Plaintiff; (d) disbursing funds to purchase securities without timely receipt of stock certificates in exchange; (e) disbursing funds to other, unknown accounts without receipt of any securities in exchange; (f) reporting false CUSIP numbers on Plaintiff's monthly account statements; (g) reporting inaccurate, inflated, or false market values for the assets held in Plaintiff's accounts; (h) charging excessive custodial fees based on the inaccurate, inflated, or false market values; (i) failing to perform the auditing, reporting, and custodial duties required of IRA custodians; and (j) otherwise failing to notify Plaintiff and the SEC of the "obvious fraud" committed by TAG.

State Street moves to dismiss Plaintiff's complaint in its entirety, arguing that it had a strictly ministerial role as account custodian, and that Plaintiff has failed to allege conduct giving rise to a breach of its duties under the custody agreements. State Street has set forth multiple arguments in support of dismissal, each of which will be addressed in turn.

## II. Legal Standard

In order to state a claim for relief, Federal Rule of Civil Procedure Rule 8(a)

requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). However, the Court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Further, "a court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [him]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Despite the leniency of the general standard, Federal Rule of Civil Procedure 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "This Rule serves an important purpose in fraud actions by alerting

defendants to the 'precise misconduct with which they are charged' and protecting defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370–71 (11th Cir.1997). Rule 9(b) is satisfied when the complaint sets forth: (1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each statement and the person responsible for making (or in the case of omissions, not making) same; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud. *Id.* at 1371.

## III. Analysis

### A. Applicable Law

■■■■ Federal courts sitting in diversity jurisdiction must apply the substantive law of the forum state (Florida), including its choice of law rules. *Westerman v. Sears, Roebuck & Co.*, 577 F.2d 873, 878 (5th Cir.1978). Under Florida law, a contractual choice-of-law provision is enforceable "unless the law of the chosen forum contravenes strong public policy." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1341 (11th Cir.2005). In this case, the custody agreements contain choice-of-law provisions which state that "This Agreement shall be governed by the laws of the State of New York." The Court will thus apply New York law to Plaintiffs contract claims.

■■■■ These narrow choice-of-law provisions do not, however, encompass Plaintiff's tort claims. *See Green Leaf Nursery v. E.I DuPont De Nemours & Co.*, 341 F.3d 1292, 1300–01 (11th Cir.2003). The Court must therefore turn to Florida's "most significant relationship" test to determine which state's laws govern. *Id.* at 1301. Under this test, courts con-

sider the following factors in order to determine which state has the most significant relationship to the incident giving rise to the tort: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. *Id.* In this case, Plaintiff is an individual residing in Florida, and State Street is a Massachusetts corporation and maintains an office in Florida. Presumably, Plaintiff's assets were located in Florida and the monthly account statements at issue were received by Plaintiff in Florida. The Court thus concludes that Florida has the most significant relationship to Plaintiff's tort claims (at least more significant than New York), and Florida law will be applied.

**B. Breach of Contract Claims**

██ "A breach of contract claim under New York law requires the plaintiff to allege: '(1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach.'" *Schlessinger v. Valspar Corp.*, 817 F.Supp.2d 100, 105 (E.D.N.Y.2011). State Street does not dispute that the custody agreements are valid contracts.[5] State Street argues that Plaintiff's claims fail because the duties which were allegedly breached are not provided for in the agreements, and because the alleged breaches did not proximately cause Plaintiff's damages. State Street further argues that Plaintiff's claims are precluded

under the provisions which limit its liability to losses caused by gross negligence or willful misconduct. These arguments raise issues of contract interpretation, which is a matter of law to be resolved by the Court. *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, England,* 136 F.3d 82, 86 (2d Cir.1998).

██ It is well-established that agreements are to be construed in accordance with the parties' intent. *Greenfield v. Philles Records, Inc.,* 98 N.Y.2d 562, 750 N.Y.S.2d 565, 780 N.E.2d 166, 170 (2002). "The best evidence of what parties to a written agreement intend is what they say in their writing." *Id.* "Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Id.* "A primary factor to be considered in any attempt to interpret a contract is the purpose of the parties in making the contract." *Wing Ming Properties (U.S.A.) Ltd. v. Mott Operating Corp.,* 148 Misc.2d 680, 561 N.Y.S.2d 337, 340 (Sup. Ct.1990). If the parties' over-all intention is clear from the document, individual provisions are to be construed in a way which will carry out the plain purpose and object of the agreement. *Kass v. Kass,* 91 N.Y.2d 554, 673 N.Y.S.2d 350, 696 N.E.2d 174, 181 (1998); *Cromwell Towers Redevelopment Co. v. City of Yonkers,* 41 N.Y.2d 1, 390 N.Y.S.2d 822, 359 N.E.2d 333, 337 (1976). A contracting party's duties are limited to those expressly provided for in the agreement, and courts are to not read in additional duties "unless it can be clearly implied from the language and purpose

---

**5.** In light of State Street's concession that the custody agreements are valid contracts, Plaintiff has agreed to dismiss his claims for breach of implied contract. *See Clark–Fitzpatrick, Inc. v. Long Island R. Co.,* 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190, 193

(1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject"). Accordingly, these claims are dismissed with prejudice.

of the entire agreement and the surrounding facts and circumstances." *Hooper Assocs., Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 549 N.Y.S.2d 365, 548 N.E.2d 903, 905 (1989). Further, courts "should not adopt an interpretation which will operate to leave a provision of a contract without force and effect." *Acme Supply Co., Ltd. v. City of New York,* 39 A.D.3d 331, 834 N.Y.S.2d 142, 143 (2007) (internal quotation marks omitted). "An interpretation that gives effect to all the terms of an agreement is preferable to one that ignores terms or accords them an unreasonable interpretation." *Id.*

The custody agreements at issue in this case expressly state that Plaintiffs accounts were established "for the purpose of holding or disposing of any property" received by the custodian, State Street.[6] Consistent with this purpose, the agreements authorized State Street to perform certain account transactions "as instructed by or on behalf of" Plaintiff, including the authority to "receive property/investments in the Account against payment or free against receipt," "deliver property/investments from the Account against payment or free against receipt," and "purchase and sell investments for the Account." The agreements also provide that State Street was authorized to "accept and rely upon all instructions which you [State Street] believe in good faith are given by or on behalf of [Plaintiff]," and State Street shall incur no liability to Plaintiff for any act or omission "in accordance with instructions on which you [State Street] are authorized to rely ... unless your reliance is the result of your gross negligence or willful misconduct." The agreements further authorized State Street to rely on the instructions of Plaintiff's named advisor, "Taurus Advisory Group," regarding the

sale, delivery, purchase, and receipt of securities or other property, without further approval from Plaintiff.

The parties 1 rights and obligations with respect to the monthly account statements are contained in Paragraph 19 of the agreements, which provides:

> A statement of all transactions in the Account, with a list of the securities held in the Account, including current market value, if available to you, shall be rendered monthly. In the absence of the filing in writing with you by the undersigned of exceptions or objections to any such statement within sixty (60) days of issuance date, the undersigned shall be deemed to have approved such statement, and you shall be released, relieved and discharged with respect to all items set forth therein. Market values are obtained from sources that you believe to be reliable, however, you cannot guarantee their accuracy.

Paragraph 20, titled "Custodian Responsibility," provides in relevant part:

> You will be responsible for only those duties stated in this Agreement or expressly contained in instructions to perform the services described herein given to you pursuant to the provisions of this Agreement and, without limiting the foregoing, you shall have no duty or responsibility:
>
> (a) to supervise the investment of, or make recommendations with respect to the purchase, retention or sale of, any investment relating to the Account;
>
> (b) with regard to any investment in the Account as to which a default in the payment of principal or interest has occurred, to give notice of default, make demand for payment or take any other action with respect to such default;

---

6. The relevant provisions of the Chase Agreement and the IRA Agreement are identical. The Court thus construes both agreements simultaneously. matter.

(c) for any act or omission ... of any affiliated or unaffiliated subcustodian, securities depository broker or agent selected ... by the undersigned or any other person to effect any transaction for the Account;

(d) to evaluate, or report to the undersigned regarding, the financial condition of any party to which you deliver investments or payment pursuant to this Agreement; or

(e) for any loss occasioned by delay in the actual receipt of notice by you or any payment, redemption or other transaction in respect to which you are authorized to take some action pursuant to this Agreement.

██ It is apparent that State Street's role as custodian was merely administrative, and that State Street's only investment duties were to carry out the instructions given by Plaintiff or TAG. There is nothing in the custody agreements which required State Street to ensure timely delivery of property into the account or to confirm the validity of the promissory notes received. The only discretionary authority State Street held with respect to investments is found in the Reservation of Right clauses, which provide:

You reserve the right to refuse to accept any investment for the Account which is in a form or condition which you, in your sole discretion, determine is not compatible with the services to be performed under this Agreement.

However, these clauses did not create an affirmative *duty* for State Street to validate each transaction. As the title implies, State Street was merely granted the *right* to refuse acceptance of certain invest-

ments. Further, the custody agreements clearly and unambiguously disclaim any duties to supervise account investments or to take other actions not specifically required by the agreement. The Court finds that Plaintiff has failed to state a claim for breach of contract with respect to State Street's disbursement of funds and settlement of account transactions, each of which was undisputedly done at TAG's direction,

██ Furthermore, the custody agreements specifically exempt State Street from liability for any acts and omissions in reliance on instructions which State Street subjectively and in good faith believed were given by Plaintiff or by someone acting on Plaintiff's behalf, unless such reliance was the result gross negligence or willful misconduct.[7] In this case, State Street was expressly authorized by Plaintiff to accept and rely on TAG's investment instructions. In the absence of a duty to discover fraudulent transactions, the fact that the promissory notes were "obviously fraudulent" is insufficient to support an inference of negligence, let alone gross negligence or willful misconduct. Plaintiff's allegations at most establish that State Street should have known of the fraud, whereas gross negligence under both Florida and New York law requires a *conscious* disregard of one's duties. *Cent. State Transit & Leasing Corp. v. Jones Boat Yard, Inc.*, 206 F.3d 1373, 1377 (11th Cir.2000) (citing *Sullivan v. Streeter*, 485 So.2d 893, 895 (Fla.Dist.Ct.App.1986)); *Jenson v. Fletcher*, 277 A.D. 454, 101 N.Y.S.2d 75, 79 (1950). The Court is not obligated to accept as true Plaintiff's general, conclusory allegations that State

---

**7.** The general limitation of liability clause found in Paragraph 20(B) is superseded by the provision in Paragraph 13 which specifically pertains to State Street's liability when following the instructions of Plaintiff or some-

one authorized by Plaintiff. *See Puerto Rico Tel. Co., Inc. v. SprintCom, Inc.*, 662 F.3d 74, 96 (1st Cir.2011) (specific provisions in a contract trump the general provisions).

Street was grossly negligent or that it engaged in willful misconduct.

██ As to State Street's reporting obligations, the custody agreements only required State Street to provide Plaintiff with monthly statements containing the account transactions, a list of the securities in the account, and any available market value information obtained from sources which State Street believed to be reliable. Accordingly, State Street's failure to disclose any other information, such as the fact that the promissory notes bore TAG's signature rather than that of the purported issuer, cannot give rise to a breach. The fact that the market values in the monthly statements were false or inaccurate also does not give rise to a breach, as State Street had no duty to validate the CUSIP numbers or otherwise investigate the accuracy of the information provided by TAG. Indeed, the custody agreements expressly disclaimed any guarantees as to the accuracy of the reported market values.[8]

██ Plaintiffs failure to comply with the notice requirements contained in the custody agreements is also fatal to his breach of contract claims based on the monthly account statements. The agreements clearly and unequivocally release State Street from liability for all items in the monthly statements if after sixty days Plaintiff has failed to give written notice of objection.[9] Plaintiff's argument that the statements did not contain sufficient information for him to detect errors is unavailing, as the waiver provisions contain no such exception. *See Puerto Rico Tel. Co., Inc. v. SprintCom, Inc.,* 662 F.3d 74, 96–97 (1st Cir.2011); *Josephs v. Bank of New York,* 302 A.D.2d 318, 756 N.Y.S.2d 518, 520 (2003). Finally, and perhaps most significantly, there is no dispute that the fraudulent transactions which were the source of Plaintiff's loss were completed prior to the delivery of the account statements. Plaintiff is thus unable to establish that the information (or lack thereof) in the account statements proximately caused his damages, which is independent grounds for dismissal. *Fezzani v. Bear, Stearns & Co., Inc.,* 384 F.Supp.2d 618, 639 (S.D.N.Y.2004) (dismissing claims based on account statements which were issued after stock purchases were completed).

██ With respect to the allegedly excessive fees charged to Plaintiffs accounts, the custody agreements authorized State Street to charge "for all fees and expenses incurred in connection with the Account and for custodian fees based on the custodian fee schedule in effect from time to time." The complaint does not allege that State Street did not comply with the fee schedule set by the agreement. Rather,

---

8. Contrary to Plaintiff's assertions, the statements made by State Street in the April 28, 2011 letter do not reasonably support an inference that State Street knowingly reported inaccurate market information. This letter appears to be not much more than a gratuitous notice that the market information State Street obtained from TAG may no longer be accurate and would thus not be included in future statements.

9. This clause comports with New York's banking laws which impose a duty on the customer to examine bank account statements for any discrepancies and to promptly notify the bank of any unauthorized activity. *Monreal v. Fleet Bank,* 95 N.Y.2d 204, 713 N.Y.S.2d 301, 735 N.E.2d 880, 882 (2000); *In re Estate of Ray,* 24 Misc.3d 285, 874 N.Y.S.2d 891, 893 (2009) (plaintiffs claims that bank failed to exercise care in permitting unauthorized withdrawals held time-barred where agreement contained 60–day notice requirement); N.Y. U.C.C. Law § 4–406(c). The customer's failure to provide the bank with timely notice constitutes a complete defense to claims based on the unauthorized items. *New Gold Equities Corp. v. Chem. Bank,* 251 A.D.2d 91, 674 N.Y.S.2d 41, 41 (1998).

Plaintiff claims that State Street improperly assessed fees based on the inflated market values of the assets being held in the account. Again, there is nothing in the agreements which required State Street to verify the market values provided by TAG. State Street's assessment of fees based on these values therefore does not give rise to a breach. *See Anwar v. Fairfield Greenwich Ltd.,* 831 F.Supp.2d 787, 795 (S.D.N.Y.2011) (no breach where contract did not require bank to calculate "servicing fee" based on "actual" assets, and bank had no duty to independently discover that the asset values were inflated due to massive fraud).

In sum, Plaintiff has failed to allege a breach of State Street's duties under the custody agreements. The Court may not read into the agreements the additional duties claim by Plaintiff, as doing so would not only be inconsistent with the their plain purpose, but would also contradict the provisions which clearly and unambiguously limit State Street's duties to those expressly provided for in the agreements. Accordingly, Plaintiff's breach of contract claims must be dismissed.

**C. Tort Claims**

 Florida's economic loss rule provides that "parties to a contract can only seek tort damages if the alleged tortious conduct constitutes a tort distinct from the parties' contractual rights and obligations." *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC,* No. 06–80652–CIV–RYSKAMP, 2007 WL 7124464, at *8 (S.D.Fla. Feb. 12, 2007), *aff'd,* 600 F.3d 1334 (11th Cir.2010).[10] A limited exception exists in the context of professional negligence actions, which is not the case here. *See id.* Plaintiff's conclusory, vague allegations that "State Street was subject to certain duties arising by operation of law" including, "without limitation, compliance with the regulations of the United State Treasury Department's Office of Controller of the Currency ('OCC') and local laws for custodian banks and SEC regulations" are insufficient to prevent application of the economic loss rule.[11]

 Plaintiff is also unable to establish that State Street owed Plaintiff fiduciary duties. Under Florida law, banks ordinarily do not owe fiduciary duties to their customers. *Jaffe v. Bank of Am., N.A.,* 667 F.Supp.2d 1299, 1319 (S.D.Fla.2009) (citing *Motorcity of Jacksonville, Ltd. v. Se. Bank N.A.,* 83 F.3d 1317, 1339 (11th Cir.1996)). "One may not ... unilaterally impose a fiduciary rela-

---

**10.** New York employs a similar rule. *See Carmania Corp., N.V. v. Hambrecht Terrell Int'l,* 705 F.Supp. 936, 938 (S.D.N.Y.1989).

**11.** Plaintiff has provided no authority in support of his allegation that State Street had independent duties by virtue of the fact that the British Virgin Islands has been designated by the OCC as a "High Intensity Financial Crime Area." A review of the relevant statutes reveals that these designations are solely for law enforcement purposes and do not allow for private rights of action. *See* 31 U.S.C. §§ 5341, 5342.

Plaintiffs allegations that State Street violated its IRA custodial duties pursuant to 26 U.S.C. § 408 of the Internal Revenue Code do not fare any better. Numerous courts have held that "there is no implied cause of action against allegedly errant IRA fiduciaries under Section 408 of the Internal Revenue Code." *Grund v. Delaware Charter Guarantee & Trust Co.,* 788 F.Supp.2d 226, 235 (S.D.N.Y.2011). "Section 408 of the Code does no more than establish a framework whereby individuals may obtain favorable tax treatment." *Id.* "[S]ection 408 does not impose a specific duty of care requiring an IRA custodian to prevent a customer from making unwise investment decisions or to exceed the agreed-upon duties set forth in the IRA Agreements." *Mandelbaum v. Fiserv, Inc.,* 787 F.Supp.2d 1226, 1237 (D.Colo.2011).

tionship [on a lender] without a conscious assumption of such duties by [the lender] to be held liable as a fiduciary." *Id.* Here, the controlling custody agreements establish that State Street was merely a passive intermediary and they specifically disclaim any fiduciary responsibility. The fact Plaintiff unilaterally placed his trust in State Street to oversee the account investments is therefore insufficient to create a fiduciary relationship. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC,* No. 06–80652–CIV–RYSKAMP, 2007 WL 7124464, at *7 (S.D.Fla. Feb. 12, 2007), *aff'd,* 600 F.3d 1334 (11th Cir.2010) (dismissing breach of fiduciary claim where parties' agreement disavowed existence of fiduciary relationship); *Eclipse Med., Inc. v. Am. Hydro–Surgical Instruments, Inc.,* 262 F.Supp.2d 1334, 1349 (S.D.Fla.1999) (same). *Accord, Sekerak v. Nat.'l City Bank,* 342 F.Supp.2d 701, 712 (N.D.Ohio 2004); *Abbott v. Chem. Trust,* No. 01–2049–JWL, 2001 WL 492388, at *8 (D.Kan. Apr. 26, 2001). In the absence of any duties independent from those imposed by the custody agreements, Plaintiff's tort claims for negligence, gross negligence, negligent misrepresentation, and breach of fiduciary duty are barred by the economic loss rule.[12]

### D. Aiding and Abetting Claims

 In order to establish a claim for aiding and abetting, the plaintiff must establish that that the aider and abettor had knowledge of the underlying breach of fiduciary duty or fraud, and that the aider and abettor substantially assisted or encouraged commission of the breach or fraud. *In re Caribbean K Line, Ltd.,* 288 B.R. 908, 919 (S.D.Fla.2002); *Hines v. Fi-Serv, Inc.,* No. 808–CV–2569–T–30AEP,

2010 WL 1249838, at *4 (M.D.Fla. Mar. 25, 2010). "In order for a claim of aiding and abetting to survive a motion to dismiss, the plaintiff must allege that the defendant had actual knowledge of the underlying wrongdoing." *Lawrence v. Bank of Am., N.A.,* No. 8:09–CV–2162–T–33TGW, 2010 WL 3467501, at *3 (M.D.Fla. Aug. 30, 2010). "[W]hile the element of actual knowledge may be alleged generally, the plaintiff still must accompany that general allegation with allegations of specific 'facts that give rise to a strong inference of actual knowledge regarding the underlying fraud.'" *Id.* (quoting *Rosner v. Bank of China,* No. 06 CV 13562, 2008 WL 5416380, at *5 (S.D.N.Y. Dec. 18, 2008)). *See also Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.,* No. 05–60080CIV, 2008 WL 926513, at *6 (S.D.Fla. Mar. 31, 2008). "Conclusory statements that a defendant 'actually knew' [are] insufficient to support an aiding and abetting claim where the facts in the complaint only suggest that the defendant 'should have known that something was amiss.'" *Platinum Estates, Inc. v. TD Bank, N.A.,* No. 11–60670–CIV, 2012 WL 760791, at *3 (S.D.Fla. Mar. 8, 2012) (alterations omitted).

 The courts in both *Rosner* and *Citco Group* found allegations that a bank's disregard of "obvious red flags" such as atypical and non-routine banking transactions were insufficient to establish the conscious awareness of wrongdoing necessary to maintain an aiding and abetting cause of action. Plaintiff's claims which are premised on the same theory also fail. Though Plaintiff has generally alleged actual knowledge, the factual allegations at most establish that State Street

---

**12.** The Court also questions Plaintiff's ability to meet Rule 9(b)'s heightened pleading standards with respect to his negligent misrepresentation claims. *See Pruco Life Ins. Co. v.* *Brasner,* No. 10–80804–CIV, 2011 WL 2669651, at *4 (S.D.Fla. July 7, 2011) (holding that Rule 9 applies to claims for negligent misrepresentation).

should have known of the underlying breaches. Moreover, the substantial assistance prong cannot be established where, as here, State Street had no duty to disclose the alleged irregularities in the transactions. *See Lawrence*, 2010 WL 3467501, at *4.[13]

### IV. Conclusion

The Court has carefully considered the motion, response, reply, applicable law, and pertinent portions of the record. For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that State Street's motion to dismiss [**DE 9**] is **GRANTED.** Given the clear and unambiguous language of the governing contracts, the Court finds that amendment of Plaintiff's complaint would be futile. Accordingly, this case is **DISMISSED,** and the Clerk of Court is directed to CLOSE this case and **DENY** any pending motions as **MOOT.**

---

**13.** The Court finally notes that, in addition to the substantive deficiencies of Plaintiff's causes of action, Plaintiff's claims premised on transactions which occurred prior to March 20, 2008 are likely barred by Florida's four-year statute of limitations. Fla. Stat. Ann. § 95.11(3).